16 N.J. Super. 53 (1951)
83 A.2d 817
YETTA EILEN, PLAINTIFF,
v.
TAPPIN'S, INC., A CORPORATION, AND FRANK GOODMAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 25, 1951.
*55 Mr. John K. Bangs, attorney for the plaintiff.
Mr. Saul J. Zucker, attorney for the defendants.
FRANCIS, J.C.C. (temporarily assigned).
Plaintiff brought this action against defendant, Tappin's, Inc., seeking damages for breach by it of a contract under which she claims to have had lifetime employment. Defendant moved for summary judgment in its favor under Rule 3:56-3, which requires such judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
Following the oral argument defendant's motion for summary judgment was granted. However, before the order was submitted for signature the matter seemed to require and was given some further consideration, and it is fair to say that the persuasive dissenting opinion of Justice Oliver in Lewis v. Minnesota Mutual Life Insurance Company, 240 Ia. 1249, 37 N.W.2d 316, 329 (Sup. Ct. Ia. 1949), was largely responsible for the view now expressed herein.
As defendants point out, there are many cases throughout the country (and perhaps they express the majority view) to the effect that:
"The general rule is that in the absence of additional express or implied stipulations as to duration, a contract for permanent employment, for life employment or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and therefore, a discharge without cause does not constitute a breach of such contract justifying recovery of money damages therefor." (135 A.L.R. 654; 35 Am. Jur. 460, sec. 24.)
And:
"* * * Where the employee has given consideration additional to the services incident to the employment, or, as it is sometimes stated, where the employee purchases the employment, in the absence *56 of a statute, other terms in the contract, or circumstances to the contrary, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, is valid and enforceable and not against public policy, and continues to operate as long as the employer remains in the business and has work for the employee, and the employee is able and willing to do his work satisfactorily and does not give good cause for his discharge, a discharge without cause constituting a breach of such a contract entitling the employee to recover damages therefor." (135 A.L.R. 654., Anno. Contract for Permanent Employment.)
The rule which speaks of "additional consideration," beyond the mere agreement on the part of the employee to render service, as a requisite to support a contract of life employment, is merely a device created by the courts to test whether or not the parties specifically and definitely intended to make such a contract. Assuming the legality of the subject matter, there is no reason why two understanding persons, bargaining at arms' length, cannot make an agreement contemplating lifetime employment so long as they clearly and unequivocally state their intention to do so. As Associate Justice Miller said in Littell v. Evening Star Newspaper Co., 73 App. D.C. 409, 120 F.2d 36, 37 (U.S.C.A.D.C. 1941):
"Some of the courts have reasoned from these cases that, to prove a contract of permanent employment, two considerations must be shown; that is, a consideration in addition to the services to be performed; and that in the absence of two considerations there can be no such contract. This misconception results from mistaking the form for the substance. If it is their purpose, the parties may enter into a contract for permanent employment  not terminable except pursuant to its express terms  by stating clearly their intention to do so, even though no other consideration than services to be performed is expected by the employer or promised by the employee. The meaning of the cases previously referred to is that where no such intent is clearly expressed and absent evidence which shows other consideration than a promise to render services, the assumption will be that  even though they speak in terms of `permanent' employment  the parties have in mind merely the ordinary business contract for a continuing employment, terminable at the will of either party."
Basically what the courts are saying when they declare that some additional consideration, beyond the promise *57 to render service, must appear to support a lifetime employment contract is that where such unusual contracts are sued upon the intention of the parties to make such a compact must be established clearly, specifically and definitely. Where the intention of the parties to do so is clearly and expressly shown the lifetime employment agreement of itself is not "so vague and indefinite as to time as to be void and unenforceable because of uncertainty or indefiniteness." (56 C.J.S. 69, sec.6d. Williston on Contracts, sec. 39, p. 110.) "The duration of the employment under such contracts, however, depends ultimately on the intention of the parties, as shown by the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words used would be ordinarily understood * * *." (56 C.J.S. 78, sec. 8 c.)
While there is no case in New Jersey in point, the impression to be gathered from the opinions dealing generally with the duration and legality of employment contracts is that our courts will look to the language employed by the parties and to all the circumstances of the particular situation in reaching a conclusion on the subject. No language has been discovered which seems to apply the additional consideration rule. For example, in Willis v. Wyllys Corporation, 98 N.J.L. 180 (E. & A. 1922), Justice Parker wrote:
"There is great diversity of view in the different jurisdictions respecting this class of cases. The `English view,' so called, tends to a construction establishing a contract for a definite term, if this can be spelled out of the language used. The `American view' favored by most of the states, tends toward a holding that the hiring is at will unless the contrary be fairly plain. 26 Cyc. 973 et seq.; Williston on Contracts, sec. 39. Our own cases seem to favor the English view."
And in Dennis v. Thermoid Company, 128 N.J.L. 303 (E. & A. 1942), Justice Bodine said:
"In contracts of service, when no fixed term is provided, the intention of the parties must be found as a fact from all the circumstances *58 surrounding the employment. Williston on Contracts (Rev. ed.) sec. 39. The former English view to regard a contract of hiring to be for a fixed term, if it could be so construed, has been followed in this state."
These considerations necessitate an examination of the pleadings, the affidavits submitted, and the deposition of the plaintiff. From them it appears that plaintiff was in the employ of the defendant from March 29, 1926, until June 8, 1942, and for about the last 12 years of that period she was comptroller of the company. A former employee says in his affidavit that during his approximately 12 years of service:
"There was no one in the organization who had a greater responsibility for running the entire business. Mr. Goodman (President of Tappin's) was out a great deal of the time and Miss Eilen apparently had his complete confidence and was in complete charge of the business. She signed checks both on the business account and on Mr. Goodman's personal account. She had charge of the finances of the business and all the systemizing and keeping of books and accounts. To my personal knowledge Miss Eilen worked longer hours than any other employee including time at nights, Saturdays, Sundays and holidays.
On occasions when I would have business matters to discuss with Mr. Goodman he would frequently say to me, `Miss Eilen will have to O.K. this,' and he would suggest that I obtain her suggestion on this matter and frequently he would send for her and ask her to express a judgment on the subject. On many occasions Mr. Goodman spoke to me in glowing terms about Miss Eilen and how fortunate he was to have such a capable and dependable person connected with the business and that he could not get along without her."
Some difficulty arose and plaintiff discontinued working for defendant on June 8, 1942. Following this, in August, 1942, she commenced employment as office manager for the New York Technical School. Thereafter, according to her affidavit, in December, 1942, Rowland Goodman, defendant's president, came to her and offered her lifetime employment if she would give up her position and return to his company as comptroller. After several conferences, in which the express provision was made by defendant that she was assuming a lifetime contract and on her part that she in turn was making a definite promise to continue such employment for *59 the remainder of her natural life, she resigned from her existing employment and returned to defendant.
The terms upon which her service was resumed were definitely fixed. Beginning July 1, 1943, she was to receive a base salary of $5,000 per year, payable in semi-monthly installments, and at the end of the company's fiscal year (March 31) she was to be paid annually a bonus of not less than $2,000 per year, and when federal salary stabilization (which was then in effect) was ended, in lieu of bonus, she would be given additional compensation based upon the net profits of the company, to be agreed upon between the parties.
Plaintiff was paid in accordance with this agreement, with some modifications resulting in increased base pay, until May 12, 1950. On this day she claims she was discharged by defendant without cause.
In my judgment, on the facts shown, a jury question is presented as to whether or not the parties intended to enter and did enter into a definite and express contract for lifetime employment, or whether they were simply making an agreement of indefinite hiring. The facts are such that it cannot be said as a matter of law that no showing of a definite, express and specific lifetime contract has been made by the plaintiff's proof. The record now discloses only the affidavits submitted by the plaintiff and the deposition of the plaintiff submitted by the defendant. These proofs show a long-time service with the defendant; that she was an extremely valuable employee and, in fact, a substantial factor in the running of the business; that during the period between the cessation and resumption of her employment things were "confused" and that while she was away it cost the company $10,000. These are circumstances for consideration by the jury in reaching its conclusion as to whether or not the parties intended to make a lifetime contract of employment.
A trial court must be mindful of the fact that under Rule 3:56-3 summary judgment should be granted with extreme caution; that it should only be granted where "palpably" there is no genuine factual issue presented, and that *60 time has often been lost through a "mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment." (Bozant v. Bank of New York, 156 F.2d 787 (C.C.A.2d Cir. 1946); Transcontinental Gas Pipe Line Corporation v. Borough of Milltown, 93 Fed. Supp. 283 (U.S.D.C.N.J. 1950)).
Defendant advances the further ground that express authority from the corporation to make an unusual contract of this nature must be pleaded. However, the complaint alleges that the corporation was "dominated and controlled by Rowland Goodman, who owned all of its capital stock and was also its President and principal director and principal executive." This allegation sufficiently raises the issue of Goodman's authority.
Under all of the circumstances the motions for summary judgment must be denied and the action held for the submission of the full proof on both sides at the trial.