Jay H. ROMACK, Appellant
(Plaintiff Below),

v.

PUBLIC SERVICE COMPANY OF
INDIANA, INC., Appellee
(Defendant Below).

No. 4–985 A 251

Court of Appeals of Indiana,
Fourth District.

Nov. 10, 1986.
Rehearing Denied Jan. 13, 1987.

William H. Sparrenberger, Indianapolis, for appellant.

Michael R. Maine, Gayle L. Skolnik, Indianapolis, Curtis M. Jacobs, Cooper, Cox, Jacobs, Reed & Barlow, Madison, for appellee.

YOUNG, Judge.

Jay H. Romack appeals the trial court's entry of summary judgment in favor of Public Service Company of Indiana, Inc. (PSI) on Romack's claims of fraud, constructive fraud, negligent misrepresentation, retaliatory discharge and denial of due process. Romack makes the following arguments on appeal:

1) The trial court erred when it refused to consider his supplemental affidavit in ruling on his motion to correct errors;

2) His discharge was unlawful because it violated an enforceable oral contract of employment which could not be terminated "at will" by PSI.

3) Summary judgment was inappropriate on the wrongful discharge claim because his discharge was in retaliation for the performance of a statutory right or duty;

4) The trial court erred in granting PSI's motion for summary judgment because the pleadings and evidence supported a cause of action under theories of fraud, constructive fraud, negligent misrepresentation and denial of due process; and

5) Material issues of fact existed which precluded the entry of summary judgment on his various claims.

We affirm.

In 1977, Romack applied for the position of Corporate Security Manager at PSI but did not receive the position. However, two years later, PSI contacted Romack concerning an available position. At that time, Romack was a Captain of the Indiana State Police with twenty-five years of service to his credit. Romack informed PSI that he had "permanent employment" with the State Police and would not consider leaving his position there unless the new job offered the same "permanency" of employment, advancement and benefits. An employee of PSI told Romack that if he came to work for PSI, he would have "such permanent employment." (R. 296–297) With these assurances, Romack terminated his employment with the Indiana State Police and began working for PSI on September 24, 1979 as an Operations Security Supervisor at the Marble Hill Nuclear Generating construction site.

As a result of his employment with PSI, Romack purchased a house trailer and rented a tract of land near his place of employment. Later, Romack purchased a home in that locality and moved his family to the area. PSI requested that Romack take this action so he and his family would "become a part of the community." Romack was reimbursed for the relocation costs occasioned by the first move in 1979 pursuant to PSI policy. In January of 1981, Romack sought reimbursement for the relocation costs associated with moving his family to the area. These expenses were reimbursed in February of 1981 and PSI also paid the cost of having a moving company transport Romack's household goods to the new home. The total amount paid or reimbursed by PSI was approximately $4,694.72.

On July 30, 1982, Romack was discharged by PSI. Romack requested that he be given a position elsewhere in the company because he was 52 years old and suffering from a work-related back injury.

His request was denied because PSI thought it would be better if a "clean break" was made. (R. 300) Romack subsequently filed this action asserting that he was terminated because his attempts to deal with bomb threats and alcohol and drug problems at the construction site were slowing down the work progress and costing PSI additional money because of delays. Romack also asserted that he was not an employee at will and had been unlawfully discharged. PSI moved for summary judgment on all of Romack's claims and the trial court granted the motion. Romack appeals.

When reviewing a summary judgment we must accept as true the facts alleged by the non-moving party. *Eby v. York-Division, Borg-Warner* (1983), Ind. App., 455 N.E.2d 623, 626. This leads to an examination of what facts were placed before the trial court and capable of consideration in this action. Romack argues that the pleadings, his first set of affidavits and his supplemental affidavit which was presented with his motion to correct errors, are all proper for consideration. We disagree.

Error normally cannot be based upon evidence that was not before the trial court at the time it rules on a motion for summary judgment. *Johnson v. Rutoskey* (1984), Ind.App., 472 N.E.2d 620, 623. However, new evidence that could not, with reasonable diligence, have been discovered and produced earlier may be presented by affidavit with a motion to correct errors. Ind.Rules of Procedure, Trial Rules 59(A)(6) and 59(H)(1). *See also Johnson, supra* at 623. Trial Rule 59(H)(1) affidavits cannot be used to present evidence that a party neglected to present during the summary judgment proceeding. *Mid-States Aircraft Engines, Inc. v. Mize Co., Inc.* (1984), Ind.App., 467 N.E.2d 1242, 1245. Romack was given ample opportunity to present additional evidence both at the summary judgment hearing and after the hearing. Romack refused these opportunities. After the court entered summary judgment, Romack filed his motion to correct errors and supplemental affidavit. The evidence presented in the supplemental affidavit was not newly discovered and could have been presented to the trial court prior to its ruling on PSI's motion for summary judgment. Under these circumstances, the trial court had no basis upon which it could have properly considered the supplemental affidavit and necessarily refused to consider it in ruling on Romack's motion to correct errors. Likewise, we cannot consider the facts provided in the supplemental affidavit when reviewing the trial court's action since the affidavit was properly excluded from consideration at the trial court level. With this restriction in mind, we examine the remainder of Romack's arguments.

Romack asserts that his employment with PSI was not "at will" because PSI had promised him "permanent employment," i.e., employment for the remainder of his working days. Even if the employment was initially at will, Romack argues that he gave PSI additional consideration beyond his services which modified the nature of the employment. Therefore, Romack argues that his discharge from PSI was wrongful. PSI counters that Romack's discharge was not wrongful because he was at all times an employee at will who could be discharged with or without cause at any time.

In Indiana, an employee at will may be discharged for any reason or no reason at all. *Hamblen v. Danners, Inc.* (1985), Ind.App., 478 N.E.2d 926, 928. The employment relation is at will unless there is a promise of employment for a fixed duration or the employee has given independent consideration beyond his services in exchange for the employment. *Hamblen, supra.* An employment at will relationship may be converted to one requiring good cause before termination if the employee, in exchange for permanent employment, provides independent consideration that results in a detriment to him and a corresponding benefit to the employer. *Streckfus v. Gardenside Terrace Co-op, Inc.* (1985), Ind.App., 481 N.E.2d 423, 425;

*Hamblen, supra* at 928; *Ohio Table Pad Co. of Indiana, Inc. v. Hogan* (1981), Ind. App., 424 N.E.2d 144. Therefore, in order to prevail in an action for wrongful discharge, the employee must show either that he has an employment contract which provides for employment of a specific duration or that his at will employment was converted to one which required good cause before his employment could be terminated. *Ewing v. Board of Trustees of Pulaski Mem. Hosp.* (1985), Ind.App., 486 N.E.2d 1094, 1098.

▆▆▆ In the present case, Romack argues that, because PSI gave him oral assurances of permanent employment, he was not an employee at will. Such a promise is insufficient to establish a contract for permanent employment since the period of employment is not for a definite or fixed duration. Romack was under no obligation to continue his employment with PSI and could have retired or quit at any time. Although he told PSI that he "would continue working permanently for PSI as my 'second career' for the remainder of my work life" (R. 299), this statement creates no obligation for him to do so and does not clarify or set the duration of employment. *See Ohio Table Pad Co., Inc. v. Hogan, supra* at 145; *Streckfus, supra.* Considering only the evidence most favorable to Romack, the employment contract must be treated as one for an indefinite term.

▆▆▆ Romack argues, however, that he gave additional valuable consideration to PSI in exchange for the promise of permanent employment. The consideration consisted of purchasing a trailer and moving to an area closer to the work site. Later upon the insistence of PSI, he purchased another home, assumed another mortgage and relocated his family. Romack asserts that these actions were additional consideration which altered the nature of the original contract. Romack concedes, however, that these actions were taken after his initial employment with PSI. He provides us no evidence that at the time he took these actions he did so in exchange for an additional promise by PSI to continue his employment on a permanent basis and to discharge him only for cause. Thus, the moves were not independent consideration for the asserted promise of permanent employment. In addition, we note that while moving one's household to a new location will constitute sufficient consideration for an agreement to provide moving expenses, "it will not support a contract of permanent employment so as to impose the requirement of good cause upon the right to terminate the employee." *Ohio Table Pad Co., supra* at 146. The evidence is undisputed that Romack received reimbursement for his moving expenses. The evidence clearly reveals that Romack was an employee at will who could be discharged by PSI for any reason or for no reason at all. Summary judgment on the wrongful discharge claim was appropriate since the undisputed evidence shows that Romack was an employee at will, and his discharge was not unlawful.

Romack next argues that the trial court erred in granting summary judgment because Romack was discharged for exercising a right conferred upon him by statute or protected by a statute. The trial court found that no facts were pleaded that supported the application of the public policy exception to the doctrine of employment at will. We agree.

▆▆▆ Normally, an employee at will may be discharged without cause. However, an exception exists when the employee is discharged solely for exercising a statutorily conferred right. *Morgan Drive Away, Inc. v. Brant* (1986), Ind., 489 N.E.2d 933, 935; *Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054, 1061. This exception has been narrowly construed by the Indiana Supreme Court. In *Morgan Drive Away, Inc., supra,* our supreme court refused to extend the public policy exception to a situation in which an employee was discharged after bringing a small claims action for the payment of services rendered. The court stated:

> The employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State. . . .

Revision or rejection of the doctrine is better left to the legislature. We therefore decline this opportunity to extend [the statutory right exception] to the facts of the instant case.

*Id.* at 934. Subsequently, the United States Court of Appeals, Seventh Circuit, applying Indiana law, determined that an airline co-pilot who refused to fly an unsafe airplane did not fall within the ambit of the "statutory right" exception. The court acknowledged that the Indiana Code required aircraft to operate within federal standards of airworthiness. However, the statute did not create a right on the part of pilots or other crew members to refuse to fly an aircraft they believed was not airworthy. The court stated:

> The Indiana tort of wrongful termination does not protect "whistle blowing" as such, ... unless a statute creates a right to blow a particular whistle, and Indiana's aviation statute does not.

*Buethe v. Britt Airlines, Inc.* (1986), 7th Cir., 787 F.2d 1194, 1196, *citing Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054, 1059–62.

In *Campbell, supra,* an employee was discharged for reporting purported violations of the Food and Drug Administration (FDA) regulations. The employee argued that since the manufacturer was under a duty to report relevant required data to the FDA, it necessarily became a duty of the employees to carry out that mandate. The employee concluded that if employees were discharged for reporting violations which affected the integrity of the data supplied to the FDA, an important public policy would be thwarted. *Campbell, supra* at 1059–60. The court, however, determined that the statute created no duty or right for Campbell to report the alleged violations. Thus, the court concluded that the statutory right exception did not apply.

The present case is closely analogous to both *Buethe* and *Campbell.* Romack presented the following evidence to the trial court. He was hired as an Operations Security Supervisor and later was given responsibility for construction security.

Prior to his termination there were numerous instances of bomb threats, on-site drug use, on-site alcohol use and on-site theft. Efforts to handle these problems resulted in the personnel being impeded in their employment activity. Romack's supervisor "refused to acknowledge the importance of such occurrences and prevented [Romack] from taking necessary steps to clarify and rectify the existing situation." (R. 298) As a result of Romack reporting these problems to his superior, friction arose which ultimately led to Romack's termination. Romack also states that these problems affected the health and safety of employees in the surrounding area.

Romack does not favor us with any details as to the problems until his second affidavit, which as previously discussed was untimely and therefore may not be considered. We are therefore left with the facts stated above. Romack also cites several sections of the Atomic Energy Act of 1954 in support of his statutory right argument. An examination of these sections fails to disclose any duty or right on which Romack can rely. The sections speak merely in terms of general policy goals and confer no rights on individuals. Similarly, the OSHA regulations relied on require the employer to provide a safe place to work, free from hazards likely to cause death or harm. Romack's affidavit fails to present any factual evidence as to the disagreements between himself and his supervisors. There is no evidence that PSI refused to provide a safe work place. The evidence and reasonable inferences lead to but one conclusion: Romack and his supervisors disagreed in the manner in which the problems were to be dealt with and the importance and severity of the problems. Thus, although Romack's argument that Indiana has stated a public policy in the area of worker safety and that workers cannot be discharged for reporting violations is plausible, Romack fails to present any factual evidence of what was taking place or occurring at the construction site or that he was indeed discharged because of his efforts to

deal with these problems.[1] We are therefore compelled to find that the facts presented by Romack did not support the application of the public policy exception to the at will employment doctrine.

Romack asserts that he had a valid action under the theories of fraud, constructive fraud and negligent misrepresentation. Summary judgment was properly entered on these theories. A fraud action requires the misrepresentation of past or existing facts. It cannot be based on promises of future performance. *Eby, supra* at 628. The promises and statements made by PSI were not statements of past or existing facts. They were promises to do or not to do some act in the future and do not support an action based on fraud.[2]

Romack also has no action for constructive fraud.[3] Constructive fraud may be based on promissory misrepresentations. However, it must be shown that the promisee suffered a detriment and the promisor obtained some advantage. *Eby, supra* at 628. Although Romack's special qualifications may have been a benefit to the employer, he presents no evidence of a detriment to himself. Romack shows that

he left his employment with the State Police in order to accept employment with PSI. Leaving one job to accept another did not constitute a sufficient independent detriment to support a constructive fraud claim since Romack would had to have left his State Police position in order to accept employment with PSI under any employment conditions. *See Ohio Table Pad Co., supra* at 146. The only other "detriments" relied on by Romack consisted of moving costs and expenses incurred in establishing a new residence, including additional mortgages. The evidence before the trial court indicated that the moving expenses had been reimbursed. The costs incurred in purchasing a new home are not considered a sufficient independent detriment to the employee because these actions merely place the employee in a position of being able to accept and perform the job by living near his place of work. *See Ohio Table Pad Co., supra* at 146. PSI was therefore entitled to summary judgment on this count.

With regard to the claim for negligent misrepresentation, the basic issue is

---

1. We note that Romack's second affidavit discussed the facts that Romack followed the policy of giving workers an option of leaving the work site or assisting in a search whenever a bomb threat was received. However, his superiors wanted to ignore the bomb threats in order to stop the work interruptions. These facts, if timely presented, would have bolstered Romack's argument that he was discharged for fulfilling a statutory duty, i.e., providing for and assuring worker safety as required by OSHA regulations. However, we do not address that situation since we are limited to a review of the evidence before the trial court at the time of the summary judgment.

2. Romack's reliance on *First Nat. Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345, is misplaced. In *Acra,* the court held that an action for fraud would lie where a bank stated that it would work with a borrower on a loan situation for an additional six months and that the borrower's account was fine when in fact the bank had placed a hold on the account. The court noted that a promise to do something in the future is generally not sufficient to support an action for fraud, but where the promise is coupled with a history of past dealings the promise may support an action for fraud. In *Acra,* the bank had worked with the borrower

on various loans from 1975–81. During that period the bank had extended these loans several times. Thus the bank's statement that it would work with the borrower for six more months could be construed as more than a promise in light of the parties' past dealings.

In the present case, there are no past dealings by which PSI's statement may be interpreted. They are simply promises to do a future act and are factually disimilar from the promise and events in *Acra.*

3. The trial court determined that Romack had no action for constructive fraud because he presented no facts of mutual mistake, undue influence or duress. This conclusion is based on an erroneous reading of *Blaising v. Mills* (1978), 176 Ind.App. 141, 374 N.E.2d 1166. *Blaising* does not require proof of mistake, undue influence or duress in order to prove constructive fraud. The case merely states that constructive fraud may be based on those theories. *Id.* at 1169. *See also, Brown v. Brown* (1956), 235 Ind. 563, 135 N.E.2d 614. However, summary judgment was proper as a matter of law because Romack failed to present evidence of an independent detriment.

whether PSI, through its agents, made false representations to Romack on which he relied to his detriment. *Eby, supra* at 628. As previously discussed, Romack presents no evidence of an independent detriment. As the trial court noted, the facts would support a claim for moving expenses but not a claim for the enforcement of a promise of permanent employment. Under the circumstances presented, even a claim for moving expenses would not be warranted since the only evidence was that the expenses had already been reimbursed.

 Romack's final claim is that PSI violated his 14th Amendment due process rights by discharging him without prior notice or a hearing. Due process claims in the realm of employment are based on the idea that the employment creates a property interest. *Bishop v. Wood* (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684. Before due process protections are applied two elements must be shown to exist: 1) state action; and 2) a constitutionally protected liberty or property interest. *Wilson v. Board of Ind. Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, 443, *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. Romack's argument fails on both elements.

 Romack's initial appellate brief failed to present any argument or facts to support the existence of state action. He argued solely that a protected property interest was at stake. Romack's failure to present argument on this element resulted in his failing to show a violation of due process. His attempt to argue this element in his reply brief comes too late. *See* Ind. Rules of App.Proc., Rule 8.3(A)(7); *Lambert v. Yellowbird, Inc.,* (1986), Ind.App., 496 N.E.2d 406. Romack also failed to

show that a protected property interest was involved. It is settled law that a discharged employee is not deprived of any constitutionally protected property interest where he is an employee at will. *Wood, supra; McQueeney v. Glenn* (1980), Ind. App., 400 N.E.2d 806, 810–11. As previously discussed, Romack was an employee at will and therefore had no property interest in his employment. PSI was entitled to summary judgment on this claim.

For the foregoing reasons, the trial court's decision is affirmed.

MILLER, J., concurs.

CONOVER, P.J., dissents with separate opinion.

CONOVER, Presiding Judge, dissenting.

With due deference to the opinions of my colleagues on the trial and appellate benches, I respectfully dissent. In my opinion this case involves an issue of substantial public importance which requires a change in the law currently existing in Indiana in such cases,[1] as did Justice Hunter (retired) and Judge Ratliff in *Campbell v. Eli Lilly & Co.* (1981), Ind., 421 N.E.2d 1099 (*trans. denied*) (Hunter, J., dissenting), and (1980), Ind.App., 413 N.E.2d 1054.

No case cited by the majority applies with specificity to this one. The distinguishing factors are these:

1. Romack by his twenty-five years of training with the Indiana State Police, including his training in nuclear accident, SWAT team, bomb disposal, and similar security procedures made him uniquely qualified for the position he filled with PSI,

2. He had "lifetime employment" with the Indiana State Police,

---

1. I find the words of Thomas Jefferson particularly applicable to the factual situation presented here. Engraved on the interior walls of the Jefferson Memorial in our nation's capitol are four inscriptions based upon the writings of Jefferson, describing the chief principles of his beliefs. The fourth one reads:

I am not an advocate for frequent changes in laws and constitutions, but laws and institutions must go hand in hand with the progress

of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered and manners and opinions change, with the change of circumstances, institutions must advance also to keep pace with the times. We might as well require a man to wear still the coat which fitted him when a boy as civilized society to remain ever under the regimen of their barbarous ancestors.

3. He was *recruited* by PSI to fill a position uniquely requiring a person possessing precisely the skills and abilities he had developed over his twenty-five years with the Indiana State Police,

4. He advised PSI he would leave his present position only if the new job offered the same permanency of employment, advancement and benefits, and

5. Upon that basis he was told by PSI he would have "permanent employment" if he came to work for PSI. (R. 296–297).

It was upon this state of affairs he terminated his employment with the Indiana State Police and began work for PSI as its Operations Security Supervisor at the Marble Hill nuclear generating plant construction site. No case cited by the majority parallels the facts of this one. Although *Ohio Table*, 424 N.E.2d 144 at first blush appears analogous, it is not. There, the secretary *sought* the employment, i.e. she answered a help wanted advertisement in a newspaper. *Ohio Table* is instructive, however. Discussing the emerging rules, Judge Garrard said:

> * * * (2) The relinquishment by the employee of an existing job, business, or profession, *without more*, will not impose [a permanent employment] requirement.

*Ohio Table*, 424 N.E.2d at 146. Earlier, Judge Garrard acknowledged the existence of cases in foreign jurisdictions "where the employee was induced to surrender an existing 'permanent' employment and the employer was made expressly aware that he was unwilling to do so except for permanent employment." *Id.*

### Was Romack an Employee at Will?

In my opinion this case follows the line of cases noted by Judge Garrard in *Ohio Table*. Romack was recruited by PSI because he was uniquely qualified to perform the job of operation security manager.

The majority opines Romack was no more than an employee at will, noting: (1) Romack's contract with PSI was not for a definite time or fixed duration, (2) he was under no obligation to continue his employ-

ment with PSI, (3) there was no contract for permanent employment because there was no consideration in addition to the services contracted to be rendered, and (4) leaving one job to accept another job does not constitute a detriment to the employee. Therefore, they opine, Romack failed to show *any* independent consideration or any detrimental elements required to elevate an employee terminable at will to one whom can be fired only upon good cause being shown.

I disagree, believing Romack's termination of employment with the State Police under the conditions presented here constitutes sufficient detriment to him. Therefore, the independent consideration requirement needed to elevate him above the terminable at will status has been met in this case. Accordingly, PSI must have had good cause to terminate Romack before it could terminate him without liability, under these facts.

In *Martin v. Federal Life Ins. Co.* (1982), 109 Ill.App.3d 596, 65 Ill.Dec. 143, 148, 440 N.E.2d 998, 1003, the Court of Appeals of Illinois stated:

> [T]he general rule of additional consideration is a misconception. It is actually a rule of convenience to be applied if the parties' intent regarding the permanent nature of employment is not clear. If the parties' intention is clearly manifested there is no requirement for "additional" consideration. *See also, Eilen v. Tappin's, Inc.* (1951), 16 N.J.Super. 53, 83 A.2d 817, 818–19.

In *Collins v. Parsons College* (1973), Iowa, 203 N.W.2d 594, a college professor was recruited from one university to another and promised the tenure and full professorship he held at his former university, along with the $25,000 salary and bonuses. After one year, the university reneged on the deal and only offered him $15,000. The university claimed it had the right to terminate the contract as one at will because Collins had the right to do the same. In rejecting this traditional position, the Supreme Court of Iowa stated:

Collins points to his surrender of his tenured position at Wisconsin State University to accept this position, to the knowledge of Parsons College. The evidence shows that he had good academic credentials as well as experience in teaching, and evidently the college believed he would lend stature to its staff. The college appeared eager to get him and was aware that he was surrendering a secure position to accept its offer. Once Collins left Wisconsin, he lost his tenure there. Did his surrender of that position constitute consideration for the agreement of Parsons College?

Courts are divided on such a question, some holding yes and some no. . . .

After considering the question, we think the better rule to be that an employee who gives up other employment to accept an offer of a permanent job provides independent consideration—at least, when as here the employment surrendered was itself permanent and the new employer is aware of the facts. (Citations omitted).

The result is that the college agreed to employ Collins permanently and at the salary and increments promised to 1971, and that Collins provided consideration for the agreement of the college.

203 N.W.2d at 599. *Collins* is analogous to the present case because the employer knew the employee would not have given up the prior secured position *but for* the assurance of receiving the same protections in the new job. *See Moody v. Bogue* (1981), Iowa App., 310 N.W.2d 655, 659; *Rowe v. Noren Pattern and Foundry* (1979), 91 Mich.App. 254, 283 N.W.2d 713, 715; *see also Scott v. Lane* (1982), Ala., 409 So.2d 791, 794; *Rabago-Alvarez v. Dart Industries, Inc.* (1976), 55 Cal.App.3d 91, 96, 127 Cal.Rptr. 222.

The continuity of views expressed in these cases lead me to the conclusion an employer cannot arbitrarily fire an employee when (1) the employer knows the employee had a former job with assured permanency (or assured non-arbitrary firing policies) and (2) was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency. I believe good cause *must* be shown in order to terminate such an employee under these circumstances without liability. So long as the recruited employee is performing the job he was sought out to do, there must be some good reason to fire him, apart from the whim of the employer. Following my review of the record, I do not believe firing an employee for refusing to turn his back and ignore safety violations at Marble Hill constitutes good cause.

### Constructive Fraud

For the reasons espoused above, I believe Romack had a viable cause of action based upon constructive fraud, in addition to others. He was lured from his former position by assurances of permanent employment. He was fired for competently performing the precise job he was hired to do. Such action by PSI is not only unconscionable, it also strikes at the heart of a problem constructive fraud was meant to address. In *Eby v. York Division, Borg Warner* (1983), Ind.App., 455 N.E.2d 623, Judge Miller said:

Constructive fraud consists of most of the same elements as actual fraud: material representation of past or existing facts (constructive fraud includes promissory facts, too), which representations are false and cause a reliance upon such representation to the detriment of the one so relying. The major distinction between the two types of fraud is that actual fraud is intentional or reckless deception whereas constructive fraud provides a remedy on more equitable grounds by refusing to sanction behavior which procures an unconscionable advantage to one party over another regardless of the intent. This distinction of course, not only eliminates the element of intentional behavior from actual fraud but adds another element: in addition to finding a detriment to the promisee, we must also find *an advantage to the*

*promisor.* (Emphasis in original). (Citations omitted).

455 N.E.2d at 628.

There is no question PSI received an advantage upon acquiring the expertise Romack possessed. Romack's change in employment under these circumstances does constitute substantial independent consideration as well as a detriment to him. Certainly the law does not give sanctuary to PSI's behavior in promising Romack permanent employment, only to reneg on the deal and fire him not for dereliction of duty but for performing his job too well.

### Retaliatory Discharge

There is clearly established public policy supporting Romack's claim for retaliatory discharge. He was hired by PSI to be the Operation Security Manager at Marble Hill, a nuclear power plant subject to licensing and regulation by the Nuclear Regulatory Commission pursuant to the Atomic Energy Act. 42 U.S.C. § 2011–2284. Romack was a safety expert. He was recruited because he possessed the caliber of expertise required for the position. He found problems with the plant's safety and security and reported these problems to his superiors. Because he would not lower his standards and ignore the safety problems with which he had been hired to deal, he was fired.

The Supreme Court of Illinois addressed this national public policy in *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372. There, an employee was discharged in retaliation for his refusal to work at a nuclear facility while the operations were being conducted in violation of Nuclear Regulatory Commission regulations. The court stated:

> Plaintiffs have alleged that William Wheeler was discharged in violation of a clearly mandated public policy.... The protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence, and by the enactment of the legis-

lation cited, Congress has effectively declared a clearly mandated public policy to that effect.

92 Ill.Dec. at 566, 485 N.E.2d at 377.

Our courts have addressed the employment at will doctrine public policy dilemma. In *Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054, our First District held an employee was without a cognizable claim for retaliatory dismissal where the employer allegedly fired him for reporting the dangerous and lethal effects of company-manufactured drugs to his superiors.

Judge Ratliff, dissenting in part, believed the employee should have a cause of action premised upon the policy of protecting the public from dangerous drugs. He stated:

> [I] would extend the protection of the "public policy exception" to grant a right of action for damages to any employee at will whose wrongful and retaliatory discharge contravenes clearly established public policy.... In my view, if the discharged employee could establish that he was dismissed in retaliation for the exercise of any right or duty granted or required by such strong public policy, he should recover damages.... The appropriate remedy, in my view, as supported by the cases and commentary cited herein, is a tort action for damages. Giving such a right of action for damages would serve as a deterrent to retaliatory discharge and would promote the very same strong and compelling public policy which the retaliatory discharge would violate.

413 N.E.2d at 1067.

Justice Hunter, dissenting to the denial of transfer (*Campbell v. Eli Lilly & Co.* (1981), Ind., 421 N.E.2d 1099), also questioned blind adherence to the employment at will doctrine in cases where public policy interests are involved, stating:

> Rarely in the law do we confront such compelling circumstances for the re-examination of an existing legal principle.... Here, the rule operates to deny Campbell any recourse in law, even

though his actions which allegedly prompted his discharge served a vital public interest defined by statute—the protection of the public from dangerous drugs. *See generally,* 21 U.S.C. § 301 *et seq.* (1972). Assuming the veracity of Campbell's allegations, the refusal of the law to recognize his retaliatory discharge as actionable is repugnant.

421 N.E.2d at 1100.

Justice Hunter added:

Our continued inflexible application of the rule, however, not only neuters the internal check which the aware employee inherently supplies, but also ultimately deprives the government of information concerning goods or conduct potentially injurious to the public welfare. It is these dubious ramifications which should not be countenanced, as well as the callous treatment which the rule permits to be foisted on the citizen who, in good faith, acts on the principle of civic duty or the mandates of a professional ethical code.

421 N.E.2d at 1101.

Reviewing the facts here in concert with the insightful opinions of Justice Hunter and Judge Ratliff, there is a strong public policy concern in not silencing employees at nuclear power plants who become aware of conditions having the potential to create a nuclear disaster. If our State policy is to the contrary, I believe it must be changed for the benefit of us all. By offering no form of recourse to an employee who is fired for refusing to turn his back on safety violations, we not only do a misdeed to similarly situated employees, we also do a horrendous disservice to the public.

### Punitive Damages

If Romack's allegations of safety violations at the nuclear facility are true, I believe this case presents a situation where punitive damages may be legitimately claimed. Punitive damages may be awarded where a serious wrong, tortious in nature, has been committed in an instance in which the public interest would be served by the deterrent effect punitive damages would have on the conduct of the wrongdoer or parties similarly situated. *Rose Acre Farms, Inc. v. Cone* (1986), Ind.App., 492 N.E.2d 61, 70. . I find the public interest would clearly be served by deterring those who operate nuclear facilities from firing employees who properly perform their jobs and report safety violations.

Accordingly, I would deny PSI's motion for summary judgment and permit Romack to have his day in court.