**Jeffrey SATYSHUR, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. 1:98–CV–355.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 15, 1999.

James J. Berles, Tourkow Crell Rosenblatt and Johnston, Fort Wayne, IN, Joseph J. Heiswerg, Mantel, Cohen, Garelick, Reiswerg and Fishman, Indianapolis, IN, Harold Dunne, Livonia, MI, for Jeffrey Satyshur, plaintiff.

Jane Ann Himsel, Mark W. Ford, Johnson, Smith, Pence, Densborn, Wright and Heath, Indianapolis, IN, for General Motors Corporation, defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

Before the Court is a Motion to Dismiss submitted by Defendant, General Motors Corporation ("GM"). On October 27, 1998, the Plaintiff, Jeffrey Satyshur ("Satyshur"), filed a Complaint in the Grant County Circuit Court alleging wrongful discharge. On November 16, 1998, pursuant to 28 U.S.C. §§ 1441 and 1446, GM filed a Notice of Removal of this action from Grant County Circuit Court to the United States District Court, Northern District of Indiana, Fort Wayne Division. Subsequently, on January 6, 1999, GM submitted this Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6). Satyshur responded on February 8, 1999, and GM replied on February 23, 1999.

For the reasons which follow, the Court DENIES Defendant's Motion to Dismiss.

## FACTS

Satyshur began working at GM's Grand Rapids, Michigan, Metal Fabricating facility on September 6, 1977, as an hourly employee. Complaint at ¶ 6. Shortly after he began working at GM, he became a member of the United Automobile Aerospace and Agricultural Implement Workers of America ("UAW"). *Id.* at ¶ 7. A Collective Bargaining Agreement ("CBA") covered Satyshur's employment rights. *Id.* at ¶ 9. One of the CBA provisions was that UAW members like Satyshur could only be discharged for cause. *Id.* at ¶ 10.

On September 1, 1978, GM transferred Satyshur to a salaried position at the Grand Rapids facility. *Id.* at ¶ 11. Satyshur alleges that a representative of GM told him at the time that a CBA did not cover the salaried position, but nevertheless Satyshur would not lose any of the benefits he had as a member of the UAW, including the benefit of being discharged only for just cause. *Id.* at ¶¶ 12–13. Satyshur claims he agreed to the transfer on the basis of this assurance. *Id.* at ¶ 14.

On October 1, 1991, GM transferred Satyshur to another salaried position at its Marion, Indiana, Metal Fabricating plant. *Id.* at ¶ 16. GM expected Satyshur to work for his salary eight hours a day and forty hours a week. *Id.* at ¶ 17. GM also expected Satyshur to begin work before his shift began each morning. *Id.* at ¶ 20. Satyshur could determine when his responsibilities required him to work overtime, and if he did work beyond one hour overtime at the end of the work day, he would be compensated for it. *Id.* at ¶¶ 23–24.

As part of GM's payroll procedure, Satyshur would fill out a bi-weekly payroll form listing the time he started and completed work each day. His supervisor would review the payroll sheet and approve payment. *Id.* at ¶ 26. Satyshur also had to pass through a turnstile in the plant lobby which he entered and exited by placing a personnel card in a mechanism that would electronically allow the turn-

stile to move and make a record of the times at which Satyshur entered and exited the plant. *Id.* at ¶¶ 27–30. GM informed all salaried personnel that the purpose of the electronic recording system was to maintain security rather than calculate payroll. *Id.* at ¶ 35–36.

GM terminated Satyshur on September 29, 1997, for "improper representation of hours recorded on the time statement for payment by the employee." *Id.* at ¶¶ 37–38. Satyshur appealed his termination but it was upheld. *Id.* at ¶¶ 39–40. Satyshur claims that his termination was based on discrepancies between his biweekly payroll forms and the electronic records between January 1, 1997, and September 29, 1997. *Id.* at ¶ 42. Satyshur claims that the time he worked before his shift began and the time he put in during his lunch made up for the occasions on which he was late for work. *Id.* at ¶¶ 45–47. He also claims that he often had to exit and reenter the plant to bring supplier representatives into the plant, with the result that the electronic turnstile and card device may have mistakenly recorded that he left work early. *Id.* at ¶¶ 52–57. Satyshur claims he was at all times properly paid. *Id.* at ¶¶ 64–66.

## STANDARD FOR MOTION TO DISMISS

In determining the propriety of dismissal under Fed.R.Civ.P. 12(b)(6), the court must "accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991). The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits. *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, a court must "construe

pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). A complaint is not even required to plead facts; a plaintiff can plead conclusions as long as they "provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County,* 66 F.3d 151, 154 (7th Cir.1995).

## DISCUSSION

In its Reply, GM notes that Satyshur responded fifteen days after Local Rule 7.1 of the Northern District of Indiana required him to respond to GM's Motion to Dismiss. However, GM does not move to strike Satyshur's Response and seems content to engage the issues presented in that Response. The Court, then, will give due consideration to Satyshur's Response and make its determination based on the merits of the case.

■ The parties agree on the application of Indiana law to this case. Indiana law recognizes two basic forms of employment: (1) employment for a definite or ascertainable term, and (2) employment at will. *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 717 (Ind.1997). "If there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause, by either party." *Id.*

■ The Indiana Supreme Court has recognized three exceptions to the employment-at-will doctrine: (1) adequate independent consideration; (2) public policy; and (3) promissory estoppel. *Id.* at 718. In their briefs, GM and Satyshur have engaged in argument over the application of only the first of these exceptions. Should Satyshur, then, be able to establish that he provided GM with adequate independent consideration in exchange for the assurance that he would only be terminated for good cause, GM would not be able

to terminate Satyshur arbitrarily, but only for good cause. *Id.*

The Indiana courts have found that independent consideration existed where an employee gave up his right to file a wrongful discharge claim against his employer, *Speckman v. City of Indianapolis,* 540 N.E.2d 1189,. 1192 (Ind.1989); where an employee released his employer from liability on a personal injury claim, *Toni v. Kingan & Co.,* 214 Ind. 611, 15 N.E.2d 80 (1938); and where an employee conveyed a valuable coal lease to a new employer in exchange for a job, *Mt. Pleasant Coal Co. v. Watts,* 91 Ind.App. 501, 151 N.E. 7 (1926). In *Romack v. Public Service Co. of Indiana,* 511 N.E.2d 1024 (Ind.1987), the Indiana Supreme Court reversed the appellate court's grant of summary judgment to the employer, PSI, by adopting in part the dissenting opinion of Judge Conover in *Romack v. Public Service Co. of Indiana,* 499 N.E.2d 768 (Ind.Ct.App.1986) (Conover dissenting). Romack had lifetime employment with the Indiana State Police and was recruited by PSI to fill a position requiring the precise skills and abilities he had developed over his twenty-five years of service with the Indiana State Police. *Romack,* 499 N.E.2d at 771. He advised · PSI he would leave his position only if the new job provided him with the same permanency of employment, advancement and benefits. *Id.* He alleged that PSI gave him the assurances he sought. *Id.* The Indiana Supreme Court found there to be a genuine issue of material fact over whether Romack provided adequate independent consideration to support an employment contract, in which case he would have the benefit of termination for cause. *Id.* at 777.

 Indiana courts have rejected claims of adequate independent consideration where employees have sought employment with another entity, left their original employment, and relocated in order to pursue new jobs. *Wior v. Anchor Industries, Inc.,* 669 N.E.2d 172, 176 (Ind. 1996); *Ohio Table Pad Co. of Indiana,*

*Inc. v. Hogan,* 424 N.E.2d 144, 146 (Ind. Ct.App.1981). Moving ·one's household to a new location, while sufficient to constitute consideration for an agreement to provide moving expenses, will not constitute independent consideration to support a contract of permanent employment so as to impose the requirement of good cause upon the right to terminate the employee. The relinquishment by the employee of an existing job, business, or profession, without more, will not impose such requirement. *Id.* In moving or giving up a prior job, the employee is merely placing himself in a position to accept the new employment. There is no independent detriment to the employee because he would have had to do the same things in order to accept the job on any basis, and there is no independent benefit bestowed upon the employer. *Id.*

Indiana courts also routinely state that, "adequate independent consideration is provided ... when ... the employer is aware that 'the employee had a former job with assured permanency (or assured nonarbitrary firing policies)' and 'the employee was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency.'" *Orr,* 689 N.E.2d at 718 (quoting *Wior,* 669 N.E.2d at 175–76 (citing *Romack,* 499 N.E.2d at 778)). In his Complaint, Satyshur pleads the following:

9. Plaintiff's employment rights were covered by the CBA.

10. One of the provisions of the CBA was that UAW members could only be discharged for cause.

12 At the time of his transfer from an hourly position to a salaried position, Defendant told Plaintiff that while his salaried position was not covered by a CBA, nonetheless, one of his conditions of employment was that he would not lose any of the benefits he had as a member of the UAW.

13. One of the conditions of employment that Plaintiff would not lose was the benefit of his being discharged only for just cause.

14. On assurance that one of his conditions of employment as a salaried employee would be his not losing any of the benefits he had under the CBA, Plaintiff agreed to be transferred from his hourly position to salaried.

Satyshur argues that his "claim of independent consideration is stated in his complaint: he agreed to leave the protection of the CBA only on the basis discharge for cause was part of his condition of employment." Response at 6. These pleadings appear to meet the standard for adequate independent consideration articulated by the Indiana Supreme Court because, according to the pleadings, GM was aware that Satyshur had permanency under the CBA and that Satyshur was accepting the new job only upon receiving assurances that GM guaranteed similar permanency.

GM argues that Satyshur's complaint should be dismissed because he does not plead that he provided the independent consideration adequate enough to impose the condition of good cause termination. Brief in Support of Motion to Dismiss at 4–8 and 10–12. GM seeks support for its position in *Wior v. Anchor Industries, Inc.*, 669 N.E.2d 172 (Ind.1996). Brief at 7–8. In *Wior*, the Indiana Supreme Court affirmed summary judgment in favor of the employer, Anchor. The employee, Wior, claimed he had furnished adequate independent consideration to support termination for cause only since in order to accept the job he relocated himself, agreed to subject himself to dismissal should he do work for a competitor, and gave up a business with good prospects for the future. *Id.* at 176. The Court acknowledged that Wior brought unique skills to his position at Anchor, and suffered some change in position by accepting that position. *Id.* at 177. However, the Court also noted that Sewing Services, Wior's business, had only existed for a short period of time, had not reached its potential, and had made relatively limited profits. *Id.* at 176. Also, Wior had been actively seeking other positions and there wasn't sufficient evidence to say that Anchor recruited him. *Id.* The Indiana Supreme Court concluded, therefore, that Wior did not provide Anchor with any consideration that he would not have given in exchange for at-will employment. The disadvantages to Wior of taking the Anchor position did not rise to the level of independent consideration that would require cause for termination. *Id.* at 177.

■ The Court notes that the *Wior* opinion decided a motion for summary judgment, whereas the instant motion is to dismiss under Fed.R.Civ.P. 12(b)(6). In determining that Wior's abandonment of his business was not adequate independent consideration to support for cause termination in his subsequent employment, the *Wior* Court relied on evidence concerning the viability of Wior's business and his interest in continuing his business. Because of the importance of this evidence to the decision, it does not appear likely that *Wior* could have been decided on a 12(b)(6) motion. Under 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To dismiss the instant case on 12(b)(6), then, the Court would have to hold that the abandonment of Satyshur's CBA protection could not be independent consideration sufficient to support for cause termination. But Indiana case law in fact says that there is adequate independent consideration when the employer knows that the prospective employee has a position with permanency and will only take the proffered position on the assurance that it too will include permanency. *Orr*, 689 N.E.2d at 718. In pleading, then, that he gave up CBA protection for assurances of continued permanency, Satyshur

sufficiently alleges that he provided adequate independent consideration to support for cause termination. Whether Satyshur can muster the evidence to prove that his job transfer involved detriment to himself and benefit to GM is a determination that must await summary judgment or trial.

■ GM also argues that the adequate independent consideration exception to at will employment only applies when an employee takes a new job with a new employer. Brief at 8–9 and 11. GM points out that *Romack,* 511 N.E.2d 1024, states, "an employer cannot arbitrarily fire an employee when (1) the employer knows the employee had a *former job* with assured permanency . . . and (2) was only accepting the *new job* upon receiving assurances that the *new employer* could guarantee similar permanency" (emphasis added). Brief at 9. This language, of course, is also found quoted above in *Orr,* 689 N.E.2d at 718. The terms, "former job" and "new job" create no distinction from Satyshur's situation in which he transferred from a former hourly job to a new job which was a salaried position. The term, "new employer" might suggest a distinction, since Satyshur's old and new jobs were with the same employer. However, GM provides no explanation why the employer must be different in order for the adequate independent consideration exception to apply. An employee who transfers form one job to another with the same employer should have the same rights and protections as one who transfers jobs from one employer to another.

GM also looks to support from *Mehling v. Dubois County Farm Bureau Cooperative Ass'n,* 601 N.E.2d 5 (Ind.Ct.App.1992). In *Mehling,* the plaintiff, Kathleen Mehling, had worked for her brother's business, Ferdinand Farm Services, for eleven years. *Id.* at 6. Co–Op then purchased the assets of this company and another company, Dale, also owned by Kathleen's brother, for which she also worked. *Id.* Kathleen did not request and Co–Op did not offer her a written employment contract. *Id.* After she was laid off and refused another job with the company at lower pay, Kathleen brought suit, alleging, among other things, breach of contract and wrongful discharge. *Id.*

The Indiana appellate court affirmed summary judgment in favor of Co–Op. The plaintiff claimed that her oral employment agreement assuring her of termination for cause fell outside the Statute of Frauds, even though the agreement extended beyond one year, because Co–Op was a new employer to whom she had given adequate independent consideration. *Id.* at 7 and 8, n. 3. The Court found, however, that Co–Op was not a new employer, but rather the same employer under new management, and that plaintiff did not give Co–Op adequate independent consideration. *Id.* at 7 and 8, n. 3. The Statute of Frauds, therefore, applied, and the plaintiff had no breach of contract claim. Because it found there was no adequate independent consideration that could support for cause termination, the Court also held that the employment relationship was at will, so that the plaintiff did not have a claim for wrongful discharge. *Id.* at 7–8. The appellate court's finding that Co–Op was not a new employer, then, concerned the Statute of Frauds issue alone and had no bearing on the at will or independent consideration issue. This is clear from note 3 of the *Mehling* opinion, part of which note GM omitted by means of an ellipsis. Brief at 9.

Additionally, Kathleen [Mehling]'s claim that Co–Op was a "new" employer, which would put her within the ambit of the exception *to the Statute [of Frauds]* as stated in *Romack v. Public Service Co.* (1986), Ind.App., 499 N.E.2d 768, modified, 511 N.E.2d 1024, must fail since her employer was not new, rather, the company was merely under new ownership and she was still employed by Ferdinand and Dale and her brother remained her direct supervisor.

Id. at 8, n. 3 (emphasis added). *Mehling,* then, does not provide support for GM's argument that the independent consideration exception to at will employment only applies to a new job with a new employer.

Finally, GM points out that the company terminated Satyshur eight years after his second transfer within GM, from a salaried position in Michigan to a salaried position in Indiana. Brief at 12–13, Reply at 5–6. If the transfer from an hourly to a salaried position constituted a move to a new job with a new employer, then the transfer from one salaried position to another salaried position constituted a move to a new job and a new employer as well. Brief at 12. But Satyshur has not alleged that anyone at GM promised him termination for cause as a condition of his position in Indiana. Rather, he has alleged such a promise for his Michigan job only. *Id.* GM concludes that Satyshur has not pled any adequate independent consideration for the position from which he was terminated, the one in Indiana. *Id.*

The Court has already expressed its scepticism regarding the significance GM insists on seeing in the "new job" and "new employer" terms. GM's argument, then, lacks a solid foundation. But besides this, the question of whether it was reasonable for Satyshur to believe that GM's alleged promise of for cause termination should follow him in the various salaried positions he may hold in the company is a question of fact which it would be inappropriate to decide on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.