**Glenn WIOR, Appellant–Plaintiff,**

v.

**ANCHOR INDUSTRIES, INC., Appellee–Defendant.**

**No. 82A01–9406–CV–203.**

Court of Appeals of Indiana, First District.

Oct. 25, 1994.

Rehearing Denied Jan. 11, 1995.

Joseph A. Yocum, Yocum and Yocum, Evansville, for appellant.

Wm. Michael Schiff, Mary Lee Franke, Kahn, Dees, Donovan & Kahn, Evansville, for appellee.

ROBERTSON, Judge.

Glenn Wior appeals from the summary judgment granted to Anchor Industries, Inc., in Wior's lawsuit for breach of contract, unjust dismissal, and wrongful discharge. Wior presents the following issues:

I. Did the court below commit error in granting Anchor Industries, Inc.'s (hereafter "Anchor"[)] ] motion for summary judgment against Glenn Wior (hereafter "Wior").

II. Did the court below's statement of undisputed material facts omit facts that require a trial on the merits.

III. Did Wior have a wrongful discharge claim for breach of contract of permanent employment outside the statute of frauds.

IV. Did Wior have a viable claim for wrongful discharge based upon his refusal to terminate an employee for having a worker's compensation claim.

V. Did the court below's findings relating to Anchor's employee handbook correctly state any viable issue.

IV. Did Wior have a viable claim for either negligent misrepresentation or intentional misrepresentation.

We affirm in part and reverse in part.

■■■ On review of summary judgment, this Court stands in the shoes of the trial court. *Maurice F. Jones Trust v. Barnett Banks* (1994), Ind.App., 637 N.E.2d 1301, 1303. This Court must liberally construe all designated evidentiary matter in favor of the nonmovant and resolve any doubt against the movant. *Id.* Even if it appears that the nonmovant will not succeed at trial, summary judgment is inappropriate where material facts conflict or where undisputed facts lead to conflicting inferences. *Id.* Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law. *Id.*

The evidence most favorable to Wior, the nonmovant, shows that he has worked in the sewing and needle trades industry since childhood. He first worked in a family business, then for other employers, then for himself. He eventually operated a consulting business in Indianapolis.

Anchor Industries is a manufacturer of custom canvas and synthetic products for the outdoor recreational industry. Due to a promotion within the company, a Plant Supervisor position became available at a plant in Evansville; and Anchor Industries advertised for the position in an Indianapolis newspaper. The advertisement was a "blind ad," which means the prospective employer is not identified. The advertisement did not mention that the position was located in Evansville, only the "Middlewest." Wior responded to the advertisement with a resume and a cover letter.

Anchor Industries contacted Wior about prospective employment. At a later meeting, Wior advised Anchor Industries that he currently had permanent employment through his consulting business and that, without permanent employment with Anchor Industries, he would not move himself and his family from Indianapolis to Evansville. Anchor Industries informed Wior that they were looking for someone they did not have to train to fill the position. Anchor Industries indicated the position was a "position of permanence" and specified "that it was not temporary employment." Employment was to be "until retirement;" "[i]t was ... 20 plus years." When Anchor Industries asked Wior whether he would be willing to give up his business to work for Anchor Industries, Wior answered, "with a commitment to a sound future, a long-term employment—you were talking 20 plus years—a good opportunity here to be a V.P. at Anchor, yes." Wior stated that he would agree to come to Evansville but that he had to have a permanent job. The company agreed and hired him.

Wior began work on August 3, 1992. Anchor Industries informed him that his job performance would be evaluated after 90

days of employment. The subsequent job performance evaluation revealed that production in several departments would not be affected by Wior's absence and that Wior lacked "a sense of what direction to go to learn the job." On or about November 11, 1992, Anchor Industries discharged Wior because he "was just not fitting in at Anchor." Anchor had been looking for someone it did not have to train and Wior "was just not working out."

## I, II, & III

Wior claims he has a valid wrongful discharge claim for breach of contract of permanent employment and asserts that his oral contract remained outside the Statute of Frauds. He claims he could not be discharged without good cause. Anchor Industries takes the contrary positions. The trial court stated that Wior's claim:

> is not supported by the undisputed, material facts in the record. No enforceable oral employment contract can be found to exist between Wior and Anchor because of a failure to comply with the requirement of Indiana's Statute of Frauds ("Statute") and Wior cannot avoid the Statute's requirement under any theory.

Wior need not, however, have supported his claim with undisputed facts in the record. Summary judgment is inappropriate where facts, although undisputed, lead to conflicting inferences. The trial court should have liberally construed all designated evidentiary matter in favor of Wior and should have resolved any doubt against Anchor Industries.

The parties agree that the applicable portion of Indiana's version of the Statute of Frauds states, in pertinent part:

> No action shall be brought in any of the following cases:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Fifth. Upon any agreement that is not to be performed within one (1) year from the making thereof ...
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized ...

Ind.Code 32-2-1-1.

It must affirmatively appear by the terms of a contract, that its stipulations are not to be performed within a year after it is made, in order to bring it within the provisions of the statute of frauds. *Hinkle v. Fisher* (1885), 104 Ind. 84, 3 N.E. 624. The Statute of Frauds has always been held to apply only to contracts which, by the express stipulations of the parties, were not to be performed within a year, and not to those which might or might not, upon a contingency, be performed within a year. *Indiana & I.C.R. Co. v. Scearce* (1864), 23 Ind. 223 (quoting *Wiggins v. Keiser* (1855), 6 Ind. 252). The one year clause of the Statute of Frauds has no application to contracts which are *capable* of being performed within one year of the making thereof. *Kiyose v. Trustees of Indiana University* (1975), 166 Ind. App. 34, 40–41, 333 N.E.2d 886, 889 (emphasis original). In a contract of lifetime employment, death is the contingency which renders the agreement fully performed. *Id.* Because the contingency is one which may occur at any time, such a contract *by its terms* is capable of being performed within one year and is therefore not within the Statute. *Id.* (emphasis original) (citing 2 Corbin, Contracts Sec. 446 (1950)).

Under the evidence most favorable to Wior, the terms of his employment contract with Anchor contains no affirmative provision that its stipulations were not to be performed within a year after it had been made. Whether the employment was at-will or permanent, the contract might or might not have been performed within a year. Anchor Industries takes the position that the employment was at-will; but, under Anchor Industries' approach, the employment could have and, in fact, did end before the expiration of one year. To the contrary, Wior claims that the contract contemplated "permanent" employment. If so, then his death within one year of the agreement is a contingency which would have rendered it fully

performed within a year. Thus, under either legal theory, the contract, by its terms, was capable of being performed within one year. The Statute of Frauds therefore does not apply to prevent Wior's action on the oral contract.

■ Anchor Industries contends that Wior must produce evidence of "independent consideration" to establish a contract of permanent employment; and, because he did not, Anchor Industries need not have had "good cause" for his discharge. To the contrary,

> the general rule of additional consideration is a misconception. It is actually a rule of convenience to be applied if the parties' intent regarding the permanent nature of employment is not clear. If the parties' intention is clearly manifested there is no requirement for "additional" consideration.

*Romack v. Public Service Co. of Indiana* (1986), Ind.App., 499 N.E.2d 768, 777 (quoting *Martin v. Federal Life Ins. Co.* (1982), 109 Ill.App.3d 596, 65 Ill.Dec. 143, 148, 440 N.E.2d 998, 1003), *dissent adopted in part,* 511 N.E.2d 1024, 1025. *See also, Jarboe v. Landmark Community Newspapers* (1993), Ind.App., 625 N.E.2d 1291, 1295 (oral promises in regard to employment which are unenforceable under Statute of Frauds may nonetheless be enforceable under promissory estoppel); *Eby v. York–Division, Borg–Warner* (1983), Ind.App., 455 N.E.2d 623, 627 (promissory estoppel as a consideration substitute in employment case); *Pepsi–Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696, 698 (same).

■ As a general rule, employment relationships are terminable at the will of either party. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *trans. denied.* If the tenure of service cannot be determined from the terms of the contract, such contract is one at will and may be terminated at any time at the election of either party. *Pepsi–Cola,* 440 N.E.2d at 697. Thus, parties are free to contract for permanent employment so long as the permanency can be determined from the terms of the contract.

■ The contract of employment, out of which the relation of employer and employee arises, may be either express or implied, verbal or written. *Kirmse v. City of Gary* (1944), 114 Ind.App. 558, 51 N.E.2d 883 (citing 39 C.J. 39, § 10). One may not, however, unilaterally bind another to a contract of employment; a meeting of the minds is necessary to establish the employment relationship. *Moore v. Review Board of Indiana Employment Security Division* (1980), Ind. App., 406 N.E.2d 325. Mutual assent is a prerequisite to the creation of a contract. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411. The intention of the parties is a factual matter to be determined by the trier of fact from all of the circumstances. *Continental Grain Co. v. Followell* (1985), Ind. App., 475 N.E.2d 318, *trans. denied.*

The evidence is sufficient to support the conclusion that Wior and Anchor Industries engaged in a bargained-for exchange for permanent employment and that Wior therefore was committed to work until retirement. If Wior's version of the events is believed, then the parties' intention with regard to the permanent nature of the employment is clearly manifested and there is no requirement of independent consideration.

■ Even if Wior were required to have produced evidence of independent consideration, however, the evidence most favorable to Wior supports the existence of such independent consideration. In *Ohio Table Pad Co. of Indiana, Inc. v. Hogan* (1981), Ind. App., 424 N.E.2d 144, while the employee had

> indicated a desire to work until she was "ready" to retire and indicated that she "expected" to retire at age sixty-two, under the evidence she was not committed to do either.

*Id.* at 145. There, the employee had manifested a subjective interest in finding a steady position to carry her through the years and to last her until she was ready to retire. *Id.* The employee, however, "would have had to do the same things in order to accept the job on any basis." *Id.* at 146. The evidence was insufficient as a matter of law to establish more than a contract of employment terminable at the will of either party. *Id.* Viewed most favorably to the

employee, the evidence established merely that the employee had sought the job and, in order to accept it, she had given up her existing secretarial job and had been required to move her residence. *Id.* at 147. Such conduct did not constitute such independent consideration necessary to convert her employment to one requiring good cause for termination. *Id.*

The *Ohio Table* court identified two instances from other jurisdictions which support the existence of independent consideration. One of these instances was where the employee had been induced to surrender existing "permanent" employment and the employer was made aware that the employee was unwilling to do so except in return for permanent employment. *Ohio Table*, 424 N.E.2d at 146 (citing *Collins v. Parsons College* (Iowa 1973), 203 N.W.2d 594). This example of independent consideration establishes, in the face of a situation where the parties' intent regarding the permanent nature of employment is not clear, that the agreement between the parties is more than an indefinite contract of employment terminable at will. The circumstances, in fact, provide proof of a meeting of the minds about, and mutual assent to, permanent employment.

Anchor Industries places much emphasis on *Romack*, 499 N.E.2d 768, *dissent adopted in part*, 511 N.E.2d 1024, 1025. Anchor Industries proceeds through the list of "distinguishing factors" provided there and then attempts to distinguish Wior's situation from that of the employee in *Romack*. The "distinguishing factors" include that: 1) an employee uniquely qualified for the position; 2) who had "lifetime employment" with the previous employer; 3) was recruited by the new employer for a unique position; 4) advised the new employer he would leave his old position only if the new job offered the same permanency of employment, advancement, and benefits; and 5) upon that basis was told by the new employer he would have "permanent employment" if he would come to work with the new employer. *Romack*, 499 N.E.2d at 776–777. Our reading of *Romack*, however, does not lead us to the conclusion that the "distinguishing factors" are a strict recipe for "independent consideration." *Ro-*

*mack* stands for the unremarkable propositions that independent consideration is consulted when the parties' intent regarding the permanent nature of employment is not clear and that independent consideration may establish the agreement between the parties was more than a contract of employment terminable at the will of either party. The opinion itself states that the case follows the line of cases noted in *Ohio Table*, *id.* at 777, in one of which the employee, like the employee in *Romack*, had been induced to surrender existing permanent employment when the employer was aware the employee was unwilling to do so except for permanent employment. *Id.* at 778.

The present case also follows the line of cases noted in *Ohio Table*. Here, the evidence most favorable to Wior would support a determination that Anchor Industries induced Wior to surrender existing permanent employment when Anchor Industries was aware that Wior was unwilling to do so except in return for permanent employment. *See Romack*, 499 N.E.2d at 777–778. The evidence supports the view that Wior insisted upon permanent employment and that Anchor Industries agreed and hired him. Such actions are incompatible with employment at the will of the parties and establish "independent consideration" for permanent employment.

■ Anchor Industries contends that Wior's previous employment was not "permanent" because he was a self-employed, independent consultant and had been doing poorly. This is merely an invitation to view the evidence and the inferences most favorably to Anchor Industries' position. An agreement to furnish steady and permanent employment imposes on the master the duty to employ the servant as long as the servant is able, ready, and willing to perform such services as the master may have for him to perform. *See Pennsylvania Co. v. Dolan* (1892), 6 Ind.App. 109, 32 N.E. 802. An assured permanency of employment includes the notion of an assured non-arbitrary firing. *See Romack*, 499 N.E.2d at 778. The trier of fact could safely infer that Wior would have employed himself as long as he was able,

ready, and willing to perform and that he would not have fired himself arbitrarily. "Permanent" employment does not mean unceasing employment; even the permanent employee may be discharged with good cause or be cheated by death. The evidence supports the view that Wior's self-employment, as an independent consultant, was "permanent" in the sense that it could require Anchor Industries to have established good cause for Wior's discharge.

■ Thus, the Statute of Frauds did not bar Wior's action on the oral contract because it was not to be performed within one year of the agreement. Further, Wior provided sufficient "independent consideration" for the permanent employment. Finally, a genuine issue of material fact exists about whether the parties entered into a contract for Wior's permanent employment. If so, the circumstances required Anchor Industries to have had good cause to discharge Wior. Summary judgment was therefore improper.

### IV

■ Wior claims the trial court also erroneously granted summary judgment on his wrongful discharge claim. He asserts the evidence most favorable to his claim shows Anchor Industries discharged him for having refused to discharge an employee with a worker's compensation claim.

■ Public policy prevents an employer from discharging an employee for having exercised a statutorily conferred right or for having fulfilled a statutorily imposed duty. See McClanahan v. Remington Freight Lines (1988), Ind., 517 N.E.2d 390. This Court has rejected retaliatory discharge cases predicated upon a generalized violation of public policy absent a statute which declares the existence of the public policy. See Call v. Scott Brass, Inc. (1990), Ind.App., 553 N.E.2d 1225, 1229 n. 6, trans. denied. Our courts have consistently decided that broad statements of the existence and scope of public policies should be left to the legislature. See id.; Morgan Drive Away, Inc. v. Brant (1986), Ind., 489 N.E.2d 933, 934.

Wior has not identified any Indiana statute which declares the existence of a right or duty applicable to the facts of his case. As a result, he has not shown the existence of public policy in favor of his wrongful discharge claim. The trial court correctly determined that Anchor Industries was entitled to judgment as a matter of law on this issue.

### V

The trial court determined that, inasmuch as Wior had been an at-will employee, the court need not review Anchor Industries' employee handbook. This Court has decided, however, that the jury could determine Wior was a permanent employee who could be discharged only upon a showing of good cause. The contents of the handbook may be considered in the determination of good cause.

### VI

Wior asserts that he has viable claims for negligent misrepresentation and intentional misrepresentation. The trial court determined that Wior had failed to show an enforceable employment contract upon which to base his claim of fraud. The trier of fact could conclude, however, that the parties entered into an enforceable contract for Wior's permanent employment. Therefore, the trial court's determination is erroneous.

Anchor Industries maintains that Wior may not use fraud as a basis to avoid the Statute of Frauds and thus render the writing requirement virtually meaningless. As determined above, however, the contract is not violative of the Statute of Frauds because it was not to be performed within a year after having been made. Further, Wior presented sufficient evidence of "independent consideration." Therefore, Anchor Industries has not established an entitlement to judgment as a matter of law on this issue.

Judgment affirmed in part and reversed in part.

RUCKER, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I dissent from the majority's opinion that Wior has presented an oral contract outside the Statute of Frauds. It is true that the Statute of Frauds has no application to contracts which are capable of being performed within one year of the making thereof. However, the evidence most favorable to Wior does not support an inference that the parties entered an agreement that could be performed within one year. Although Wior characterized his claims as one for breach of a contract for permanent employment, permanent employment does not equate with lifetime employment under the alleged circumstances.

Wior presented his understanding of a permanent position with Anchor Industries as: "With a commitment to a sound future, a long-term employment—you were talking 20 plus us [sic] years—a good opportunity here to be a V.P. at Anchor, yes." Record at 164. He believed his period of employment was "until retirement." R. at 164. Thus, considering Wior's understanding of permanent employment, it does not equate with lifetime employment referred to in case law. The cases relied upon by the majority have found death to be a contingency to the agreements therein. However, death was not contemplated as the contingency here. To the contrary, retirement estimated to be twenty years, not death, was the contingency of the alleged agreement for permanent employment. The cases relied upon by the majority are not applicable. Even using new math principles, one cannot reasonably expect to work 20 years until retirement and simultaneously expect to perform the contract within a year. The contract as contemplated by Wior is within the scope of the Statute of Frauds. Since it was not written, Wior's claim must fail, and I would affirm the entry of summary judgment in favor of Anchor Industries on this issue.

I also note my reluctance to concur with the decision affirming summary judgment for Anchor Industries on Wior's wrongful discharge claim. It cannot be denied that public policy is transgressed when a supervisor can be discharged without legal recourse for refusing to fire an employee who filed a worker's compensation claim against the company. Although Indiana law recognizes the employee's cause of action for wrongful discharge, it has yet to grant the supervisor the same remedy. I am resigned to concur on this issue only because our courts have shown judicial restraint and refused to tread into this area, even when public policy is clearly violated, unless a statute explicitly declares the existence of the public policy.

In conclusion, I dissent from the majority decision reversing summary judgment on the breach of contract claim. On the related claims for negligent misrepresentation and intentional misrepresentation, I would affirm the trial court's determination that Wior failed to show an enforceable contract between the parties; thus, his claims likewise fail. I concur with the affirmance of summary judgment on the wrongful discharge claim.