Glenn WIOR, Appellant,

v.

ANCHOR INDUSTRIES, INC., Appellees.

No. 82S01–9505–CV–518.

Supreme Court of Indiana.

Aug. 7, 1996.

Rehearing Denied Nov. 27, 1996.

Joseph A. Yocum, Yocum and Yocum, Evansville, for Appellants.

William Michael Schiff, Mary Lee Franke, Kahn, Dees, Donovan & Kahn, Evansville, for Appellees.

ON PETITION TO TRANSFER

SELBY, Justice.

This case presents three questions: (1) whether an oral agreement for employment until retirement, which was understood by the parties to mean retirement in "20 plus" years, is unenforceable under the Statute of Frauds; (2) whether Anchor could discharge Wior without cause; and (3) whether Wior has a wrongful discharge claim based upon his assertion that Anchor terminated him for refusing to discharge an employee with a worker's compensation claim.

## I. FACTS

Glenn Wior has worked in the "needle trades" all of his working life. When Wior moved to Indianapolis in 1988, he worked at a plant manufacturing uniforms and safety equipment for the racing industry. Over the years, Wior belonged to various trade-related organizations, and subscribed to trade journals.

From early 1991 to May 1992, Wior operated a sole proprietorship in Indianapolis known as Sewing Services. Altogether, Sewing Services' gross income as of May 1992 was less than $6,500 and Wior's net profit for this period was $2,705. In 1992, Wior actively sought other employment.

Anchor Industries ("Anchor") specializes in the manufacturing of custom canvas and synthetic products for the outdoor recreational industry. In May 1992, Wior responded to a blind advertisement which Anchor placed in an Indianapolis newspaper. Anchor interviewed Wior for the position of Plant Supervisor of one of Anchor's Evansville, Indiana plants. Anchor told Wior that the position was not a temporary position. Wior informed Anchor that he would not leave Indianapolis unless he had a commitment for permanent employment until retirement in "20 plus" years. Anchor questioned whether Wior would be willing to give up his consulting business, and Wior responded, "With a commitment to a sound future, a long-term employment—you were talking 20 plus years—a good opportunity here to be a V.P. at Anchor, yes." (R. at 160). Anchor agreed to employ Wior for "20 plus" years, until Wior retired, but the parties never memorialized their agreement in writing.

Wior and his family relocated to Evansville, and Wior began work at Anchor on August 3, 1992. At this time he was advised

that his job performance would be evaluated after his first ninety days of employment. With Anchor's knowledge and assistance, Wior purchased a home in Evansville. On November 11, 1992, Anchor terminated Wior because he did not "fit in." Anchor Vice–President Ken Dimmett explained that Anchor had sought someone they did not have to train, and that Wior was "just not working out." (R. at 309).

Wior brought suit seeking damages for breach of contract, wrongful discharge, negligent misrepresentation, and intentional misrepresentation. Anchor moved for summary judgment, which the trial court granted. Wior appealed to our Court of Appeals, which affirmed in part and reversed in part. Anchor petitioned this Court for transfer. We grant transfer and affirm the trial court.

## II. THE STATUTE OF FRAUDS

Our Statute of Frauds states, in relevant part:

No action shall be brought in any of the following cases:

. . . .

Fifth. Upon any agreement that is not to be performed within one (1) year from the making thereof;

. . . .

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years.

I.C. § 32–2–1–1 (1979).

The progenitor of our Statute of Frauds is the former English Statute of Frauds, enacted more than 300 years ago. The original English statute was enacted to prevent " 'many fraudulent practices, which are commonly endeavored to be upheld by perjury

and subornation of perjury.' " *McIntosh v. Murphy,* 52 Haw. 29, 469 P.2d 177, 179 (1970) (quoting 29 Car. 2, c. 3 (1677)). Additionally, commentators have identified at least three justifications for the continued vitality of modern statutes of fraud:

(1) the Statute serves an "evidentiary" function, lessening the danger that courts or juries will be misled by perjured testimony as to the existence or purport of a contract; (2) it has a "cautionary" effect, tending to impress upon the contracting parties the significance of their agreement; and (3) it acts as a "channeling" device, providing a basis for distinguishing contracts which are enforceable from those which are not.

Note, *Statute of Frauds—The Doctrine of Equitable Estoppel and the Statute of Frauds,* 66 Mich. L.Rev. 170, 170–71 (1967). The Court of Appeals reversed in part the trial court's grant of summary judgment to Anchor concluding that Wior and Anchor's employment agreement was not within the Statute of Frauds. *Wior v. Anchor Industries, Inc.,* 641 N.E.2d 1275 (Ind.Ct.App. 1994). The Court of Appeals observed that "death is the contingency which renders [a contract of lifetime employment] fully performed." *Id.* at 1278. Because Wior could have died within one year of entering into the contract with Anchor, the Court of Appeals held that the contract was capable of being "performed" within one year and, thus, did not require a writing under the Statute of Frauds.

Judge Baker aptly points out in his dissent, however, that there is a difference between the concept of lifetime employment and Wior's permanent employment until retirement. Generally, "permanent employment" means steady employment, not lifetime or eternal employment. *Georgia Power Co. v. Busbin,* 242 Ga. 612, 250 S.E.2d 442, 443–44 (1978). In this case, Anchor assured Wior that the position offered was not a temporary position, but a position in which Wior could work until a traditional retirement age, thus allowing him "20 plus" years with Anchor.[1] Since the parties understood

---

1. At Anchor, the "normal retirement age" with pension is 65 years. When Anchor hired Wior, Wior was 42 years of age.

that retirement as used in this way would occur at an age that Wior could not attain within one year, the Statute of Frauds required the agreement to be in writing.[2] *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). While death may serve as a contingency constituting performance in a lifetime employment contract, death does not constitute performance in contracts involving employment until retirement, where the parties intend that the employee will retire only after a number of years greater than one. Retirement in "20 plus" years is the bargained-for contingency constituting performance in the contract between Wior and Anchor.

Were we to rule otherwise, the Statute of Frauds' continued vitality in service contracts would be substantially eroded. Under the Court of Appeals' analysis, any person with a service agreement intended to span a long period of time could avoid the writing requirement of the Statute of Frauds, since death could always occur within one year. Such a holding would seriously undermine the Statute of Frauds' efficacy in encouraging written contracts and preventing fraud and perjury.

■ We reject the analysis offered by the majority below as incompatible with the purposes of the Statute of Frauds. Thus, we decline to interpret death as a contingency constituting performance in an agreement for employment for "20 plus" years until the employee retires at a traditional retirement age. As such, Wior's breach of contract claim is within the Statute of Frauds and because the contract was not reduced to writing, it is unenforceable. Since no valid contract for permanent employment exists, Anchor employed Wior at will.[3]

### III. EMPLOYMENT AT WILL

■ Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason. *Speckman v. City of Indianapolis*, 540 N.E.2d 1189, 1192 (Ind. 1989). However, the at-will employment relationship may be converted to a relationship in which the employer may terminate the employee only for good cause. In order to achieve the termination-for-good-cause status, the employee must provide adequate independent consideration. *Id.*

We have held that

[a]s a general rule, Indiana employment relationships are terminable at the will of either party. If an employee gives independent consideration for an employment contract, however, the employer may terminate the employee only for good cause without incurring liability for its action.

*Id.*

We have identified fact scenarios in which the employee's act or forbearance might provide adequate independent consideration sufficient to support an employment contract terminable only for good cause. Indiana jurisprudence has suggested that giving up a competing business could provide adequate consideration, *Ohio Table Pad Co. v. Hogan*, 424 N.E.2d 144, 146 (Ind.Ct.App.1981), and has held that conveying a valuable coal lease in exchange for the employment, *Mt. Pleasant Coal Co. v. Watts*, 91 Ind.App. 501, 151 N.E. 7 (1926), or releasing the employer from liability on a personal injury claim, *Toni v. Kingan & Co.*, 214 Ind. 611, 15 N.E.2d 80 (1938), would constitute adequate independent consideration.

In *Romack v. Public Service Co.*, 511 N.E.2d 1024 (Ind.1987), (adopting and incorporating *Romack v. Public Service Co.*, 499 N.E.2d 768 (Ind.Ct.App.1986) (Conover, J., dissenting)), we held that

---

2. In interpreting a contract, the court examines the parties' intent at the time the contract is formed. *See Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind.1993). Generally, where the parties' intent can be clearly ascertained, the court will recognize and enforce the parties' agreement. *See Myers v. Myers*, 560 N.E.2d 39, 44 (Ind.1990).

3. Based upon our holding that the agreement is unenforceable under the Statute of Frauds, we need not address Wior's arguments regarding negligent and intentional misrepresentation, *see generally Kavanaugh v. England*, 232 Ind. 54, 59, 110 N.E.2d 329 (1953); *Mehling v. Dubois Co. Farm Bur. Cooperative Assn., Inc.*, 601 N.E.2d 5, 8 (Ind.Ct.App.1992), or wrongful discharge, as these are based upon breach of contract.

[A]n employer cannot arbitrarily fire an employee when (1) the employer knows the employee had a former job with assured permanency (or assured non-arbitrary firing policies) and (2) [the employee] was only accepting the new job upon receiving assurances the new employer could guarantee similar permanency.

*Romack,* 499 N.E.2d at 778.

■ Wior contends that he provided adequate independent consideration to convert his at-will employment contract to one requiring good cause for discharge. He claims that he provided adequate independent consideration when he relocated himself and his family to Evansville, agreed to subject himself to dismissal should he do work for a competitor, and gave up a business with good prospects for the future. Additionally, Wior contends that there was mutuality of obligation in that, just as Anchor could not terminate him, he could not quit the job.

In *Romack,* the employee demonstrated adequate independent consideration to require cause to terminate:

1. Romack by his twenty-five years of training with the Indiana State Police, including his training in nuclear accident, SWAT team, bomb disposal, and similar security procedures made him uniquely qualified for the position he filled with PSI,

2. He had "lifetime employment" with the Indiana State Police,

3. He was *recruited* by PSI to fill a position uniquely requiring a person possessing precisely the skills and abilities he had developed over his twenty-five years with the Indiana State Police,

4. He advised PSI he would leave his present position only if the new job offered the same permanency of employment, advancement and benefits, and

5. Upon that basis he was told by PSI that he would have "permanent employment" if he came to work for PSI.

*Id.* at 777.

■ The Court of Appeals properly noted that the factors discussed in *Romack* do not constitute a "strict recipe" for the independent consideration required for a permanent employment contract. Generally,

(1) The acts and actions involved in moving one's household to a new location, while sufficient to constitute consideration for an agreement to provide moving allowances or expenses, will not constitute independent consideration to support a contract of permanent employment so as to impose the requirement of good cause upon the right to terminate the employee; (2) The relinquishment by the employee of an existing job, business, or profession, without more, will not impose such requirement.

*Ohio Table Pad Co.,* 424 N.E.2d at 146.

As observed by the Court of Appeals in *Ohio Table Pad,*

[t]he reason for this view is that in moving and/or giving up her prior job, the employee is merely placing herself in a position to accept the new employment. There is no independent detriment to the employee because she would have had to do the same things in order to accept the job on any basis, and there is no independent benefit bestowed upon the employer.

*Id.* at 146. In one case where the employee *sought* the employment, and no other compelling consideration existed, the Court of Appeals deemed the employment at-will and terminable for any or no reason. *Id.* at 147.

Therefore, we must conclude that Wior did not give Anchor adequate independent consideration to create a permanent employment contract. Sewing Services, Wior's business, had been in business for only a short time, and Wior had been actively seeking other positions. Wior *sought out* the position with Anchor. We are not persuaded by Wior's suggestion that Anchor somehow recruited him by placing a blind advertisement in a newspaper and inviting Wior for an interview.

■ Moreover, Sewing Services earned relatively limited income and profits during its short existence. The facts in this case contrast with *Romack,* 499 N.E.2d at 777, where the employee gave up a position in which he had twenty-five years of experience and significant benefits. Here Wior gave up a business that had not yet reached its potential, and which was earning relatively little

money.[4] Based on these facts, we conclude that while Wior suffered some change in position in accepting the position with Anchor, any disadvantage stemming from this change did not rise to that level of independent consideration necessary to require cause for termination.

Wior did bring unique skills to the position at Anchor. However, this fact alone does not constitute adequate independent consideration for a permanent employment contract. Upon reviewing the entire record, we can discern no other adequate independent consideration sufficient to support Wior's claim that his employment contract was terminable only for good cause. The particular facts of this case do not support the conclusion that Wior gave Anchor any consideration that he would not have given in exchange for at-will employment.

## IV. WRONGFUL DISCHARGE

The next issue on appeal is whether the trial court erred in granting Anchor summary judgment as to Wior's wrongful discharge claim. Anchor Vice–President Ken Dimmett allegedly asked Wior to terminate an Anchor employee, Suzette Gerbrig, because Gerbrig had filed a worker's compensation claim for injuries related to carpal tunnel syndrome. Dimmett allegedly said he wanted to "nip this [carpal tunnel syndrome] problem in the bud before it becomes a bigger problem." (R. at 251). Wior went to Dimmett, and asked Dimmett to handle the situation because he did not feel it was proper to terminate Gerbrig for filing a worker's compensation claim. Wior alleges that Anchor wrongfully discharged him because he refused to terminate Gerbrig.

In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), we held that an employee discharged for filing a worker's compensation claim could bring a claim for retaliatory discharge. *Id.*, 297 N.E.2d at 428. We observed that the worker's compensation scheme was designed for the employee's benefit, and that this humane purpose would be undermined if employees exercising their statutory rights were subject to reprisal. *Id.*, 297 N.E.2d at 427. We observed that "under ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right, an exception to the general rule must be recognized." *Id.*, 297 N.E.2d at 428. Likewise, in *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 392–93 (Ind.1988), we held that an interstate truck driver had a wrongful discharge claim when he was terminated for refusing to haul a load through Illinois, when to do so would have been illegal under Illinois law. *Id.* at 391, 393. Significantly, the driver in *McClanahan* would have been personally liable for the violation and would have been subject to a fine. *Id.* at 393.

Wior argues that this rationale should be extended, and that management personnel who are themselves discharged for refusing to terminate subordinate employees with worker's compensation claims should be permitted to claim wrongful discharge. The public interest at stake in this case is the injured employee's ability to seek worker's compensation benefits. This interest is adequately protected by permitting the injured employee to bring a wrongful discharge claim, if necessary. An employee wrongly discharged because of his or her worker's compensation claim could bring an action against the employer. Moreover, as noted by the Court of Appeals, Wior has identified no other statutory right or duty implicated by these facts.[5] Given our reluctance to broaden exceptions to the employment-at-will

---

**4.** When reviewing a grant of summary judgment, we must view the facts liberally and in the light most favorable to the non-movant. *Greathouse v. Armstrong*, 616 N.E.2d 364, 366 (Ind.1993). Wior asserts that it is therefore error to consider the income of Sewing Services. Among other things, Wior asserts that "the future looked good [for Sewing Services] and there was more opportunity in Indianapolis than in Evansville." Even assuming this to be true, however, we conclude that giving up a new business that has little

income, even when the business holds much promise, differs from giving up a long-term position.

**5.** Generally, we are disinclined to adopt generalized exceptions to the employment-at-will doctrine in the absence of clear statutory expression of a right or duty that is contravened. *McClanahan*, 517 N.E.2d at 393.

doctrine and the existing, adequate protection of employees' rights to worker's compensation benefits, we decline Wior's invitation to extend *Frampton*.[6]

## V. CONCLUSION

The parties' agreement was not capable of performance within one year of its making, and is thus unenforceable under the Statute of Frauds. Anchor employed Wior at its will, and could terminate him without cause, given the absence of adequate independent consideration to require cause for termination. We decline to extend *Frampton* to the circumstances of this case, and hold that Wior has no claim for wrongful discharge. We therefore affirm the trial court's grant of summary judgment to Anchor.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

SULLIVAN, J., concurs and dissents with opinion.

SULLIVAN, Justice, concurring and dissenting.

I concur that the statute of frauds barred plaintiff's action on an oral contract. I would, however, find that plaintiff is entitled to a trial on the wrongful discharge claim. Exactly the same principle that prohibits an employer from firing an employee for filing a worker's compensation claim, *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973), should prohibit an employer from firing an employee who refuses to fire a subordinate employee for filing a worker's compensation claim.

---

**6.** We also affirm the trial court regarding its conclusion that Anchor's Employee Handbook does not create a claim since Wior provided no additional independent consideration.