Daniel L. FREELAND, Trustee, and
Rosby Corporation, Plaintiffs–
Appellants,

v.

HPA ASSET, LLC, Defendant/Third
Party Plaintiff–Appellee,

v.

Thomas J. Rosby, Third
Party Defendant.

No. 01–1610.

United States Court of Appeals,
Federal Circuit.

Decided April 24, 2002.

April 25, 2002.

Before CLEVENGER and BRYSON, Circuit Judges, FRIEDMAN, Senior Circuit Judge.

CLEVENGER, Circuit Judge.

Daniel L. Freeland and the Rosby Corporation appeal from the district court decision awarding ownership of U.S. Patent No. 5,112,099 (the "'099 patent") to HPA Asset, LLC. *See Freeland v. HPA Asset, LLC.*, No. 4:00cv0029AS (N.D. Ind. June 6, 2001). Because the district court improperly construed the language of the contract in question, we *reverse* and *remand.*

The tangled web of events leading up to this litigation begins with the collapse of a business. In this case, the business in question was that of Monon Corporation and Monon Trailer, Inc (collectively "Monon"). In 1996, these two entities declared bankruptcy. Their assets, including their patents, were sold at auction to HPA Asset, LLC ("HPA") for $14 million.

The Purchase Agreement is less than a textbook model of clarity. Section 2.1 of the Purchase Agreement provides that HPA acquired all rights, title, and interest to certain listed assets. Section 2.1(b) explicitly includes all patents or other intellectual property "held or used" by Monon in this category. However, the Purchase Agreement also expressly excludes certain assets from those to be sold, listing these as "Excluded Assets," under Section 2.2. This "Excluded Assets" section includes subsection (I), which reads as follows:

> Any assets, properties or rights that are not owned by Sellers, whether or not used by Sellers or owned by an Affiliate of Sellers; *provided, however,* that (i) any "Patents owned by Rosby Corporation" and (ii) U.S. Patent No. 4,904,017 listed on Schedule 2.2 which are hereafter determined, by final court order or otherwise, to be the property of either Seller, shall be licensed by Sellers (x) to Buyer or, at Buyer's direction, to any other Person who is a permitted licensee under, and (y) on terms and conditions substantially similar to those contained in, any license agreement entered into prior to the Closing between Rosby Corporation and Buyer pursuant to Section 9.8 of this Agreement.

The phrase "Patents owned by Rosby Corporation" is not defined elsewhere in the contract.

At the time of bankruptcy, Thomas Rosby, principal owner of Monon, asserted that the Rosby Corporation, a company he owned, was the actual owner of the '099 patent, rather than Monon. As of the time of the execution of the Purchase Agreement, the Rosby Corporation was the registered owner of the '099 patent.

As HPA has indicated in its briefing to this court, HPA wanted to structure the deal so as to protect itself regardless of whether Rosby's claim to ownership was true or false. Consequently, on the same day HPA entered into the Purchase Agreement with Monon, it also entered into a License Agreement with the Rosby Corporation. Thomas Rosby signed both agreements on behalf of both Monon and the Rosby Corporation. The License Agreement explicitly lists the '099 patent and provides that the Rosby Corporation

shall receive a world-wide, irrevocable, nonexclusive royalty of $200 for each unit manufactured by HPA using the device described in the '099 patent.

Upon bankruptcy, all of Monon's remaining assets passed to the bankruptcy estate, managed by Daniel Freeland (the "Trustee"). The Trustee filed suit against HPA in October 1997, claiming that HPA owed the estate royalties for the use of the '099 patent. The suit was dismissed in June 1998, as the Trustee did not claim that the estate owned the patent, and therefore the court found that it lacked jurisdiction. In August 1998, the Trustee brought suit against Rosby to recover the '099 patent. The subsequent year, Rosby Corporation and the Trustee entered into a settlement agreement, which provides that the Rosby Corporation:

> acknowledges and agrees that it is only nominally named as owner, and that Monon's bankruptcy estate is the owner, of the 099 patent. The Company shall execute and deliver such documents, and take all other action necessary, to transfer, assign and convey to Trustee all of its right, title, and interest in and to the 099 Patent including all rights regarding the 099 Patent under that certain license agreement dated February 20, 1997 (the "License Agreement") between the Company and HPA Asset, LLC ("HPA").

The bankruptcy court approved the settlement agreement on September 17, 1999. Pursuant to this agreement, Rosby signed a "Notice of True Owner of Patent," in order to correct ownership of the '099 patent, which stated that the "true owner" of the '099 patent "is and always has been Monon Corporation," and filed it with the United States Patent and Trademark Office ("PTO").

The Trustee then brought suit against HPA for breach of license and for patent infringement. HPA filed counterclaims asserting, in part, that it owned the '099 patent. On motion for summary judgment on the ownership issue, the district court held for HPA, dismissing the remaining claims as moot.

The district court found that the sole issue to decide was who actually owned the patent as of the execution of the 1997 Purchase Agreement. According to the district court, the agreement operates to transfer all patents owned by Monon to HPA, excluding those patents owned by Rosby. Further, the court found that Rosby's statement that Monon had always been the owner of the '099 patent was a binding judicial admission. Thus, according to the district court, ownership had always resided with Monon, and had properly transferred to HPA through Section 2.1 of the Purchase Agreement. The Trustee and the Rosby Corporation appeal.

Our jurisdiction is proper under 28 U.S.C. § 1295.

## I

Summary judgment is appropriate if there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the district court's decision to grant summary judgment *de novo*, drawing all reasonable inferences in favor of the nonmovant. *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381, 54 USPQ2d 1841, 1843 (Fed.Cir.2000). Under applicable Indiana law, "[i]n interpreting a contract, the court examines the parties' intent at the time the contract is formed. Generally, where the parties' intent can be clearly ascertained, the court will recognize and enforce the parties' agreement." *Wior v. Anchor Indus., Inc.,*

669 N.E.2d 172, 175 n. 2 (Ind.1996) (internal citations omitted).

## II

HPA argues that the Purchase Agreement's structure allows for only two possibilities. First, if Rosby actually owned the '099 patent as of the time the Purchase Agreement was executed, it would be subject to the separate license agreement between HPA and Rosby. Second, if Monon actually owned the patent, it would transfer to HPA through Section 2.1.

Such an interpretation is untenable in light of Section 2.2(I). This section clearly contemplates a license of certain patents. In essence, it sets forth a third category of property distinct from that undisputedly owned by either Monon or Rosby. This clause uses quotation marks in reciting "Patents owned by Rosby Corporation" to denote those patents with clouded or unclear title, or patents only putatively owned by Rosby Corporation. Had the quotation marks been placed solely around the word "owned," the word would refer to this third category of property, *i.e.* putatively owned patents. We see no difference between such a usage and the one actually found in section 2.2(I). With section 2.2(I) of the Purchase Agreement interpreted to embrace a category of putatively owned patents, there is no dispute that the '099 patent falls in that category, as the parties throughout have recognized the dispute as to ownership of the '099 patent.

The subsequent contractual language as to the "determin[ation], by final court order or otherwise" that the patent belonged to Monon, indicates the parties' intent to define the triggering event for the licensing provision as the resolution of the title dispute. The language of the settlement agreement and that of the Notice of True Owner filed with the Patent Office merely reflect that this dispute was resolved. Their importance thus lies not in an admission that Monon actually owned the patents, but in the fact that they resolved the title dispute, thus giving rise to the license.

Indeed, were this court to adopt HPA's proposed interpretation of the contract, we would be unable to discern any plausible scenario in which the licensing provision in Section 2.2(I) would ever acquire meaning.

We therefore hold that the Trustee is the equitable titleholder of the '099 patent.

## III

The Trustee, in turn, claims ownership of the '099 patent free and clear of any license. According to the Trustee, the language of the Purchase Agreement subjecting it to a license "on terms and conditions substantially similar to those" included in the license between Rosby Corporation and HPA is insufficiently definite to determine the scope of the licensing conditions. In short, the Trustee asserts that the Purchase Agreement amounts to no more than an agreement to agree at a later date, with no such agreement having occurred.

We disagree. The license agreement between Rosby Corporation and HPA clearly sets forth detailed licensing terms, including the amount of the royalty, sublicensing conditions, and the scope of the license.

We therefore hold that the '099 patent is subject to a license to HPA pursuant to the terms set forth in the license between Rosby Corporation and HPA.

## IV

For the above reasons, we reverse and remand this case for proceedings not inconsistent with this opinion.

COSTS

No costs.